IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-229-D

| | |
|---|---|
| IDA L. JONES, )  )  Plaintiff, )  )  )  v. )  )  CAROLYN W. COLVIN, )  Acting Commissioner of Social Security, )  )  Defendant. ) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-18, DE-20] pursuant to Fed. R. Civ. P. 12(c). Plaintiff Ida L. Jones ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be granted, and the final decision of the Commissioner be upheld.

**STATEMENT OF THE CASE**

Claimant filed an application for SSI on February 2, 1982, alleging disability beginning February 1, 1982. (R. 18.) Her claim was denied initially on April 2, 1982, and Claimant never sought review of that denial. (*Id.*) Plaintiff then filed a second application for SSI on September 11, 1992. (R. 56.) Based upon that application, an Administrative Law Judge found Claimant disabled as of that date. (R. 197.) After the settlement in *Hyatt v. Shalala*, No. C-C-83-00655-M

(W.D.N.C. Mar. 21, 1994), Claimant sought review of the Commissioner's previous denial of her application for SSI covering the period from February 1, 1982 until September 10, 1992. (R. 18.) A hearing before Administrative Law Judge William Andersen ("the ALJ") was held on November 25, 2009, at which Claimant appeared unrepresented and a vocational expert ("VE") appeared and testified. (R. 39-55.) On January 13, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 15-27.) On January 29, 2013, the Appeals Council denied Claimant's request for review. (R. 4-6.) Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision denying disability benefits under the Social Security Act, 42 U.S.C. §§ 301 *et seq*., ("Act') is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently

2

explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of her past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920; *Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. § 416.920a(e)(3).

In this case, Claimant alleges that the ALJ erred in failing to consider the opinions prepared by Claimant's treating psychiatrist, Dr. Paul Narvig. (Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 2-4.)

## FACTUAL HISTORY

### I.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found that Claimant had engaged in substantial gainful activity during some portions of the relevant period but not others. (R. 20-21.) Specifically, the ALJ found that Claimant's earnings met the threshold for substantial gainful activity from 1985-86 and in 1991. (R. 21.) During the remainder of the period, however, the ALJ found that Claimant had not worked at all or that any income from work activities did not meet the threshold necessary to be considered substantial gainful activity. (*Id*.) Next, the ALJ determined Claimant had the following severe impairments: depression, anxiety disorder, panic disorder with agoraphobia, obsessive compulsive disorder, and social phobia. (*Id*.) The ALJ found that Claimant had a non-severe impairment of elbow tendonitis. (*Id*.) At step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22-23.) Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in her activities of daily living and concentration, persistence, and pace, marked restrictions in social functioning, and one to two extended episodes of decompensation, each of extended duration. (R. 22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a limited range of light work.[1] The ALJ found that Claimant "could sustain concentration, persistence, and pace for performance of work tasks" for only two hours at a time, that she should be restricted to low-pace work, and that she should have only minimal contact with the general public. (R. 23.) In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 24-25). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a cleaner/housekeeper. (R. 25-26.) The ALJ also made alternative findings at step five. Upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 26.)

## II. Claimant's Testimony

Claimant was born on January 10, 1953 and was twenty-nine years old at the beginning of the relevant period and thirty-nine when the period ended. (R. 44.) Claimant graduated from high school and completed a year of business school. (R. 44, 83.) Claimant was last employed as a janitorial supervisor from May 1990 until September 1991. (R. 45, 83.) Claimant's past work experience also includes work as a cleaner, domestic child and elder care provider, and spa attendant. (R. 44-45, 83.)

---

[1]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

Claimant explained that the primary medical condition supporting her disability claim and her inability to work full-time during the relevant period was anxiety disorder. (R. 45-46.) The disorder manifested itself in the form of daily panic attacks, which prevented Claimant from doing anything other than lying down all day long. (R. 46.) She testified that she was forced to leave jobs because she was unable to cope with the panic attacks or to stop them from occurring. (*Id*.) Claimant stated that she was unable even to perform household chores because she needed to lie on her back all day. (*Id*.) She stated that during the relevant period, Claimant lived in a house with her mother, niece, and two nephews and that she never lifted any items weighing more than fifteen pounds. (R. 47-48.) She testified that she normally spent the entire day in bed because her panic attacks largely prevented her from doing anything else. (R. 48.)

**III.     Vocational Expert's Testimony**

Stephen Carpenter testified as a VE at the administrative hearing. (R. 49-52.) After the VE's testimony regarding Claimant's past work experience (R. 50-51), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform a full range of light work, could perform low-pace work with minimal contact with the general public, and suffered from depression, anxiety, panic attacks, obsessive compulsive disorder, social phobia, and agoraphobia, but that medication would control the individual's symptoms such that he or she could maintain concentration, persistence, and pace for two hours at a time. (R. 51.) The VE responded that such an individual would be able to perform Claimant's past relevant work as a housekeeper (DOT # 323.687-014) but would be unable to perform work as a companion (DOT # 309.677-010) or daycare worker/pre-school attendant (DOT # 359.677-018)

because each of those positions requires more than minimal contact with the public. (*Id*.) The ALJ then asked whether there were other jobs available in the local and national economies that such an individual could perform. (*Id*.) The VE responded that there were and gave as examples the jobs of marker (DOT # 209.587-034) and office helper (DOT # 239.567-010). (R. 51-52.) Next, the ALJ asked the VE to assume the same individual with the following additional restriction: the "hypothetical person [suffers] from such severe agoraphobia and anxiety and panic attacks that they [sic] may at times be housebound and may at times. . .miss more than four days of work per month." (R. 52.) The ALJ asked whether the additional restriction would eliminate the individual from performing Claimant's past relevant work. (*Id*.) The VE responded that such a restriction would preclude the individual from performing such work. (*Id*.) Lastly, the ALJ asked whether the individual with the added restriction would be able to find any other job available in the local and national economies. (*Id*.) The VE responded that the restriction requiring so many missed days of work each month would preclude all competitive employment. (*Id*.)

## **DISCUSSION**

Claimant's sole assignment of error is that the ALJ failed to consider the medical opinions of Dr. Natvig, Claimant's treating psychiatrist. (Pl.'s Mem. at 2-4.) Specifically, Claimant argues that the ALJ erred by failing to consider medical opinions expressed by Dr. Natvig in two separate forms. First, on September 30, 1992, Dr. Natvig submitted a Psychiatric Disability Report Form. (R. 170-72.) In this opinion, Dr. Natvig found that Claimant had no restrictions on activities of daily living, no difficulties in maintaining social functioning, significant problems with concentration and persistence, and opined that Claimant could not adapt to a work situation. (R. 172.) Second, Dr. Natvig wrote a letter dated May 19, 1993, wherein he detailed Claimant's

7

symptoms and expressed his opinion that Claimant would probably not be able to return to work within the next year. (R. 189.) The ALJ did not mention either of these opinions in making his RFC finding or in assessing Claimant's credibility.

The ALJ's failure to mention Dr. Natvig's September 1992 Psychiatric Disability Report Form in the decision does not merit remand. First, the opinion contains fewer restrictions than the RFC assessment performed by the ALJ. *See Rivera v. Colvin*, No. 5:11-CV-569-FL, 2013 WL 2433515, at *3 (E.D.N.C. June 4, 2013) (citing *Johnson v. Barnhart*, 434 F.3d 650, 655 (4th Cir. 2005)) ("[A]n ALJ's failure to expressly state the weight given to a medical opinion may be harmless error. . .when it is consistent with the ALJ's RFC determination."). Noting that Claimant experiences problems with concentration and persistence as a result of her panic disorder and that she has mild depressive symptoms, Dr. Natvig nevertheless found that Plaintiff's symptoms do not restrict her activities of daily living or social functioning. (R. 172.) The ALJ, on the other hand, found moderate restrictions to activities of daily living and concentration, persistence, and pace, and marked restrictions of social functioning. (R. 22.) The ALJ further limited Claimant to low-pace work, recognizing the difficulties she experienced with concentration, persistence, and pace. (R. 23.) Thus, the restrictions identified by the ALJ were the same or more restrictive than those identified by Dr. Natvig, and the ALJ's failure to address Dr. Natvig's September 1992 report was harmless error. *Rivera*, 2013 WL 2433515, at *6.[2]

Additionally, the bulk of the September 1992 Psychiatric Disability Report Form offered findings in the form of a questionnaire or form opinion, which the ALJ is entitled to give reduced

---

[2] In December 1992, Dr. Natvig completed another Psychiatric Disability Report Form, stating that Claimant's daily living activities are minimally restricted by her mild agoraphobia and that Claimant has mild concentration problems. (R. 173-75.) Like the September 1992 report of which Claimant complains, this report contains fewer restrictions than those found by the ALJ.

8

weight. (R. 171); *Nazelrod v. Astrue*, No. BPG-09-0636, 2010 WL 3038093, at *5 (D. Md. Aug. 2, 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993); *O'Leary v. Schweiker*, 710 F.2d 1334, 1341 (8th Cir. 1993)). Dr. Natvig's report offers little explanation for its findings and does not reference any clinical or laboratory diagnostics to support the opinions, thus allowing the ALJ to assign it less weight than a full, narrative opinion.

Further, both the September 1992 report and Dr. Natvig's May 1993 letter contain statements on issues reserved for the Commissioner, to which the ALJ is not required to assign any "heightened evidentiary value." *Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2005). Dr. Natvig's opinions that Claimant would be unable to adjust to any work environment and would not likely be able to return to work within the year are not medical opinions, but legal conclusions reserved for the Commissioner's decision. *See* 20 C.F.R. § 416.927(d)(2) (statement that an individual is disabled or unable to work is an administrative finding reserved for the Commissioner's decision). Such opinions may not be summarily dismissed on that basis but instead must be evaluated in light of the entire record to determine "the extent to which the [treating physician's legal conclusion] is supported by the record." *Morgan*, 142 F. App'x at 723 (alteration in original) (quoting SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996) (internal quotation marks omitted)). While the ALJ did not explicitly evaluate the extent to which Dr. Natvig's opinions were specifically supported by the record, he clearly reviewed the evidence of record and concluded otherwise. (R. 23-25.) The ALJ's failure to consider Dr. Natvig's opinions is harmless because there is no reason to believe that remanding the case to compel his consideration of them would lead to a different result. *Ngarurih v. Ashcroft*, 371 F.3d 182, 191 n.8 (4th Cir. 2004); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of

9

administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

**CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-18] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-20] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 13th day of August 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge